**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **DARRELL EUGENE WILLIAMS,** )<br><br>Plaintiff, )<br><br>v. )<br><br>**THE WEBB LAW FIRM, P.C.,** )<br><br>Defendant. ) | **Civil Action No. 12-1702** |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

Darrell E. Williams ("plaintiff" or "Williams"), an attorney, filed the above –

captioned case against The Webb Law Firm, P.C. ("defendant" or "Webb Firm") for breach of

fiduciary duties owed Williams under the Employee Retirement Income Securities Act

("ERISA"), 29 U.S.C. § 1132(a)(3).  Williams alleges the Webb Firm breach its duties by

misclassifying him as an independent contractor. (ECF No. 1)  Presently before this court are

cross-motions for summary judgment filed by Williams and the Webb Firm. (ECF No. 34 and

49.)  After considering all the submissions, this court concludes, with respect to the applicable

statute of limitations, that there is no material fact in dispute. There is no dispute that in May

2007, Williams knew that he was not receiving benefits from the Webb Firm and that he was

performing similar, or the same, occupational tasks under the independent contractor agreements

("ICAs") after January 1, 2006, entered into by Williams and the Webb Firm, as he previously

performed as an employee of the Webb Firm. (ECF No. 51-2 ¶¶ 15-20.)  At that time, Williams

would have understood his harm or at the least the harmful consequences of defendant's breach

of their fiduciary duty, i.e., not providing him employee benefits, and had actual knowledge of

his injury.  Under the circumstances, Williams' three-year window to file his claim started, at the

latest, in May 2007.  Williams did not file his claim until November 8, 2012.  The statute of

limitations under 29 U.S.C. § 1113(2) bars Williams' claim.  The court will GRANT the Webb

Firm's motion for summary judgment, and DENY Williams' motion for summary judgment.

Judgment in favor of the Webb Firm will be entered as a matter of law. Fed. R. Civ. P. 56(a);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).


I. FACTUAL BACKGROUND

The factual background is derived from the undisputed evidence of record and the

disputed evidence of record viewed in the light most favorable to the nonmoving party. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Other undisputed facts may be

discussed in the context of the legal claims where appropriate. Bielich v. Johnson & Johnson,

Inc., No. 11-1635, 2014 WL 1117939, at *1 (W.D. Pa. March 20, 2014).

A. First ICA

In January 2001, Williams began working for defendant under an independent

contractor agreement (the "First ICA") as a patent attorney. (ECF No. 58 ¶¶ 1, 3.)  On July 1,

2001, Williams began working for the Webb Firm as an associate attorney. (Id. ¶ 4.)  As an

associate attorney, Williams was paid a salary and was eligible for benefits provided by the

Webb Firm, including medical insurance, 401K (matching up to 1% of salary), profit sharing (up

to 3% of salary), life insurance, long-term disability, travel insurance, vacation time, and various

association dues, and training expenses. (Id. ¶¶ 24, 25.)

B. Second ICA

On November 10, 2005, Williams approached Russell D. Orkin ("Orkin"), then President of the Board of Directors of the Webb Firm, to discuss the possibility of reverting back to working under an independent contractor agreement. (Id. ¶¶ 27, 28.) Orkin memorialized his discussion with Williams in a memorandum sent by Orkin to the other directors of the Webb Firm on November 10, 2005. (ECF No. 55-1 at 9.) In the memorandum, Orkin reported that Williams "told me that he recognizes that he would lose the firm's benefits, including healthcare, but he was prepared to take that risk. We discussed the possibility of Darrell going back to an independent contractor [and] doing work for [the Webb Firm] on a contract basis." (Id.) Williams disputes that he made the statement attributed to him by Orkin. (ECF No. 52 ¶¶ 10-21.)

On November 30, 2005, the Webb Firm sent Williams an independent contractor agreement (the "Second ICA") offer letter. (ECF No. 55-1 at 10-11.) The offer letter provided: "The purpose of this letter is to confirm that you have resigned from your present employment with [the Webb Firm] as of December 31, 2005…. You also indicated that you understood you would lose all current and future benefits of [the Webb Firm] and you indicated you would make other healthcare arrangements." (Id.) On January 1, 2006, plaintiff began working with the Webb Firm under the terms of the Second ICA. Williams stated in his affidavit that his work duties or activities under the ICAs did not change from his work duties or activities he performed as an associate attorney for the Webb Firm. (ECF No. 51-2 ¶¶ 14-19.)

C. Third ICA

On January 10, 2007, Williams signed another independent contractor agreement (the "Third ICA") with the Webb Firm. (ECF No. 58 ¶ 6.) In May 2007, Williams approached Orkin to discuss a change in his relationship with Webb. (Id. ¶ 41.) During the conversation, Williams and Orkin discussed Williams' personal medical coverage. (ECF No. 58 ¶¶ 41-43);

(ECF No. 55-1 ¶ 26-28.)  Williams stated in his affidavit that he "approached [Orkin] to discuss the possibility of becoming an associate attorney of the [Webb Firm] again because of the fact that Plaintiff's wife would begin working part-time and may not be eligible for medical insurance." (ECF No. 51-2 ¶ 7.)  On May 16, 2007, following the discussion, an addendum was added to the Third ICA. (ECF No. 58 ¶ 7.)  In the addendum, the Webb Firm agreed to make an additional monthly payment to Williams, if Williams billed 111 hours or more. (Id. ¶ 42.)  The addendum detailed a scaled payment plan based upon Williams' total monthly billable hours. The Webb Firm agreed to pay the applicable percentage of Williams' total monthly medical costs based on the hours billed in the following manner:

> 20% if hours billed are between 111 to 120 hours in a month
> 40% if hours billed are between 121 to 130 hours in a month
> 60% if hours billed are between 131 to 140 hours in a month
> 80% if hours billed are between 141 to 150 hours in a month
> 100% if hours billed are 151 hours or greater in a month.

(ECF No. 58 ¶ 42.)

Williams continued working for the Webb Firm under the Third ICA and the addendum until November 15, 2009, when Williams' relationship with the Webb Firm was terminated.  (ECF No. 58 ¶ 8.)  Within two weeks of being terminated, plaintiff filed an application with the Pennsylvania Department of Labor and Industry ("PDLI") for unemployment benefits. (ECF No. 1 Ex. H. at 2-7); (ECF No. 58 ¶ 9.)  Plaintiff was required to submit additional information to the PDLI and, following a review of his filing, started to receive unemployment benefits sometime in May 2010, which included retroactive payments dating back to the time of his initial filing. (ECF No. 1 Ex. G. at 2-4); (ECF No. 58 ¶ 9.)


D. IRS Determination Letters

On April 4, 2013, in response to a request for a determination on Williams'

employment status with the Webb Firm the Internal Revenue Service ("IRS") issued "Form SS-

8, Determination of Worker Status for Purpose of Federal Employment Taxes and Income Tax

Withholding" ("Form SS-8"). (ECF No. 55-1 at 2.)  Williams' Form SS-8 provided:

> [y]ou were classified as an employee.  The miscellaneous income
> paid by your employer is considered wages for federal tax
> purposes.  Accordingly, you are liable for federal income tax and
> your share of Federal Insurance Contributions Act (FICA) tax on
> the income in question.

(Id.)  On April 4, 2013, the IRS issued the Webb Firm a Form SS-8 determination

letter. (ECF No. 51-1 at 3-5.)  The Webb Firm's IRS Form SS-8 provided:

> The contract specifically states the worker could not be in direct
> competition with the firm, nor could he perform services for
> another attorney or law firm without permission of the firm, which
> indicates the worker was not an independent contractor free to
> practice as he chose.  All clients remained the property of the firm,
> all services were still performed under the firm's business name,
> on the firm's premises, under the firm's insurance, clients
> continued to be billed and collected though the firm.  Any payment
> made directly to the worker, were to be endorsed and turned over
> to the firm.  As previously stated, the issuance of Form W-2 and/or
> the withholding of taxes on income for an individual would be
> considered treatment of the individual as an employee, and would
> apply in this case.  Therefore, your statement that the worker was
> an independent contractor pursuant to an agreement is without
> merit.  For federal employment tax purposes, it is the actual
> working relationship that is controlling and not the terms of the
> contract (oral or written) between the parties.

(ECF No. 51-1 at 3-4.)

E. Procedural Background

On November 8, 2012, Williams initiated this action by filing a complaint against

the Webb Firm alleging the Webb Firm breached its fiduciary duties owed to him under §

502(a)(3) of ERISA by misclassifying him as an independent contractor. (ECF No. 1.)  On

February 11, 2013, the Webb Firm filed a motion to dismiss plaintiff's complaint. (ECF No. 9.)

On March 11, 2013, Williams filed his response. (ECF No. 13.)  On April 19, 2013, the court

denied the motion to dismiss without prejudice.  On May 3, 2013, the Webb Firm filed its answer

to Williams' complaint. (ECF No. 20.)  Discovery in this matter proceeded with multiple

extension requests being granted by the court. (ECF No. 33, 39.)  On January 6, 2014, the Webb

Firm filed a motion for summary judgment and a brief in support of its motion for summary

judgment, (ECF No. 34 and 35), and a concise statement of material facts. (ECF No. 36.)

Williams filed a motion in response to the Webb Firm's motion for summary judgment and a

brief, which included a cross-motion for summary judgment, in a single submission, (ECF No.

40 and 41), with a response to the Webb Firm's concise statement of material facts. (ECF No.

42.)  On March 7, 2014, the Webb Firm filed a motion to strike Williams cross-motion for

summary judgment with an accompanying brief in support. (ECF No. 43 and 44.)  Williams filed

a response and a brief in opposition to the Webb Firm's motion to strike. (ECF No. 45 and 46.)

On March 10, 2014, Williams was advised that the single filing containing his response to the

Webb Firm's motion for summary judgment and his motion for summary judgment should have

been two separate filings.  On March 17, 2014, a hearing was held on the Webb Firm's motion to

strike and the motion was denied.

On March 27, 2014, the Webb Firm filed a reply in support for its motion for

summary judgment. (ECF No. 48.)  On March 31, 2014, Williams filed his motion for summary

judgment and a brief in support, (ECF No. 49 and 50), and a concise statement of material facts.

(ECF No. 51.)  On April 11, 2014, the Webb Firm filed a combined concise statement of

material facts. (ECF No. 52.)  On April 14, 2014, the Webb Firm filed a brief in opposition to

Williams' motion for summary judgment, a response to Williams' concise statement of material

facts, and an appendix to its brief in opposition. (ECF No. 53, 54 and 55 respectively.) On April 21, 2014, Williams filed a reply in support of his motion for summary judgment and a reply to the Webb Firm's concise statement of undisputed material facts, (ECF No. 56 and 57), and a combined concise statement of material facts. (ECF No. 58.)

II. Standard of Review

Summary judgment is appropriate if the record shows that there is no genuine dispute with respect to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. Id. at 248–49.

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party. Liberty Lobby, 477 U.S. at 255; Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007); Doe v. Cnty. of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir.2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing cases); Liberty Lobby, 477 U.S. at 248–49.

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. Celotex, 477 U.S. at 323; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by demonstrating that there is an absence of evidence to support the nonmoving party's case. Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (citing Celotex, 477 U.S. at 325). A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23. Once the movant meets that burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Liberty Lobby, 477 U.S. at 247–48; Celotex, 477 U.S. at 323–25. If

the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249.

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.' " Corliss v. Varner, 247 Fed.Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).


III. DISCUSSION

A. Arguments Presented

The Webb Firm moves for summary judgment arguing that: (1) plaintiff's claim is barred by 29 U.S.C. § 1113's three-year statute of limitations because on November 30, 2005, or in May 2007, at the latest, plaintiff had actual knowledge about the events that constituted the alleged breach of the Webb Firm's fiduciary duties; (2) plaintiff cannot establish that the Webb Firm breached its fiduciary duties by classifying him as an independent contractor; and (3) plaintiff is not entitled to benefits because he failed to exhaust his administrative remedies. (ECF No. 35.)

Williams responded and filed a cross-motion for summary judgment arguing that his claim is not barred by the three-year statute of limitations because he did not acquire actual

knowledge of the Webb Firm's breach more than three years before the complaint was filed. (ECF No. 41 at 8.) Williams contends that he filled his complaint within three years of obtaining actual knowledge of the Webb Firm's breach, i.e., within three years of November 15, 2009, when he filed for unemployment benefits, or, at the latest, May 2010, when he received retroactive unemployment benefits payments. (ECF No. 41 at 9.) Williams argues the Webb Firm breached its fiduciary duties by misclassifying him as an independent contractor, which entitles him to equitable remedies under ERISA as recognized by the Supreme Court in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866 (U.S. 2011). (ECF No. 50 at 14.)

Because the statute of limitations bars Williams' claims, the court need only address that issue.

B. <u>The Webb Firm's Motion – Three-Year Statute of Limitations Under ERISA Raised as an Affirmative Defense</u>

Under § 1132(a)(3) of ERISA, a civil action may be brought:

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3). A plaintiff asserting a breach of fiduciary duty claim under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), "must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." <u>Lewis v. Allegheny Ludlum Corp.</u>, No. 11-1619, 2013 WL 3989448, at *11 (W.D. Pa. Aug. 2, 2013) (citing <u>Romero v. Allstate Corp.</u>, 404 F.3d 212, 226 (3d Cir. 2005)).

Pursuant to 29 U.S.C. § 1113, a claim for breach of fiduciary duties under ERISA must be filed:

> after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach of violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

29 U.S.C. § 1113. "This provision 'offers a choice of periods, depending on whether the plaintiff has actual knowledge of the breach.' " Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 98 (3d Cir. 2012) (quoting Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 511 (3d Cir. 2006)).

> The Third Circuit Court of Appeals has explained:
>
> "[A]ctual knowledge of a breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists." Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992) (punctuation omitted). "[W]here a claim is for breach of fiduciary duty, to be charged with actual knowledge 'requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated.'" Cetel, 460 f.3d at 511 (quoting Gluck, 960 F.2d at 1178).

Iola, 700 F.3d at 98. The three-year statute of limitations for ERISA claims is cautiously applied. See Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001) (holding that the actual knowledge requirement triggering ERISA's shorter, three-year statute of limitations is interpreted " 'stringently' " and sets a " 'high standard for barring claims' ") (internal citations omitted). In order for the three-year statute of limitations to apply to a breach of a fiduciary claim "two temporal determinations must … be made: the date of the last action which formed a part of the breach and the date of the plaintiff's actual knowledge of the

breach." Gluck v. Unisys Corp., 960 F.2d 1168, 1178 (3d Cir. 1992) (citing Meagher v.

International Ass'n of Machinists and Aerospace Workers Pension Plan, 856 F.2d 1418, 1422–23

(9th Cir.1988), cert. denied, 490 U.S. 1039 (1989)).  Actual knowledge requires that the

defendant show that: (1) plaintiff actually knew about the events that constituted the breach of

the fiduciary duty; and (2) those events supported a claim for breach of a fiduciary duty pursuant

to ERISA. International Union of Elec., Elec. Salaried, Mach. & Furniture Workers v. Murata

Erie N. Am., 980 F.2d 889, 900 (3d Cir. 1992).

The seminal Third Circuit Court of Appeals' decision for the application of

ERISA's three-year statute of limitation is Gluck v. Unisys Corp., 960 F.3d 1168 (3d Cir. 1992).

In Gluck, the underlying violation was the defendant's decision to amend the plaintiffs' pension

plan. Id. at 1173.  The amendments impermissibly changed and partially terminated the plan,

resulting in a failure of the participants' benefits fully to vest. Id. at 1173-75.  The Court of

Appeals for the Third Circuit determined mere knowledge of the amendments could not be

deemed actual knowledge of a violation of the technical provisions of ERISA.  The court noted

that

> the company literature distributed to employees ... described [the
> amendments] as improving participants' benefit packages.... For a
> participant to have discerned a cause of action for partial
> termination at that time ... may have required a review of the plan
> document and of the plan's balance sheet ... a level of research and
> scrutiny inconsistent with section 1113's actual knowledge
> standard.

Id. at 1179.  The court reasoned that a participant could not have knowledge of an ERISA

violation where the amendment did not disclose its harmful consequences.  The court remanded

the case for a determination of "when each employee had actual knowledge of all material facts

relevant to a partial termination claim." Id. at 1179.  The court emphasized "that our holding

does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer," however; the statute of limitations "cannot accrue and cannot begin to run until the plaintiff has actual knowledge of the breach regardless of when the breach actually occurred." Id. at 1177; see Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551-52 (3d Cir. 1996) (holding that the three-year statute of limitations is triggered by knowledge of the material facts necessary to understand that some claim exists); Murata, 980 F.2d at 900 (*"*Gluck ... requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA."). In Gluck, the court of appeals cited two Ninth Circuit Court of Appeals' decisions to illustrate that a plaintiff may acquire actual knowledge from a transaction's harmful consequences or from a plaintiff's knowledge of his or her harm. See Ziegler v. Connecticut General Life Ins. Co., 916 F.2d 548, 552 (9th Cir. 1990) (the statute of limitations barred the plaintiffs ERISA claim because the plaintiffs acquired actual knowledge when they were informed in 1984 about the effect of an option that would permit the defendant to retain a substantial portion of the investment amount of the pension fund in issue, not when they could accurately quantify the injury in 1985); Meagher, 856 F.2d at 1422–23 (the plaintiff's receipt of each impermissibly reduced benefit check constituted actual knowledge).

Because an allegation that the statute of limitations has run serves as a defense, the defendant has the burden of showing that a plaintiff had actual knowledge more than three years before he filed the complaint. See Godshall v. Franklin Mint Co., 285 F.Supp.2d 628, 633 (E.D. Pa. 2003) ("Because the statute of limitations is an affirmative defense…the burden of proof that the statute of limitations bars Plaintiffs' claims rests with Defendants."); Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir.

2002) ("[I]n order to be barred by the three year statute of limitations the claimant [must] know [] the facts on which he relies to establish a breach of fiduciary duty [and] it must also be established that the claimant knows that he has a cause of action under ERISA, which includes "actual knowledge" of harm inflicted or harmful consequences.").

The Webb Firm's main contention is that Williams' repudiation of his benefits on January 22, 2001, the date of the First ICA, or November 30, 2005, the date of the Second ICA, gave Williams actual knowledge about the events that constituted the breach and began the running of the three-year limitations period. (ECF No. 35 at 3-9.) Under the law of the Third Circuit, the Webb Firm must show that the date of the last action which formed a part of the breach and the date Williams' obtained actually knowledge of the breach occurred at least three years before Williams filled his claim. The court will address each of these matters.

1. The Date of the Last Action Which Formed a Part of the Breach

In considering the ERISA statute of limitations "we must first isolate and define the underlying violation upon which ... [plaintiff's] claim is founded." Ziegler, 916 F.2d at 550-51. Williams argues the Webb Firm breached its fiduciary duties by misclassifying him as an independent contractor. (ECF No. 50 at 7.) In his brief in support of his motion for summary judgment he stated "the breaching conduct here is the misclassification of the Plaintiff as an independent contractor. That classification occurred on the date that the Plaintiff signed the Addendum (i.e., last action) on May 16, 2007." (Id.) This court agrees that the misclassification of Williams as an independent contractor is the breaching conduct; however, the court disagrees that the misclassification occurred on May 16, 2007. The misclassification occurred on January 1, 2006, when Williams began working under the Second ICA. January 1, 2006, is the date Williams was no longer classified as an associate attorney of the Webb Firm and no alteration to

Williams' employment status occurred after January 1, 2006. From this date forward, Williams continued to work under an ICA for the Webb Firm. Although the May 2007 addendum altered or added provisions to Williams' contract with the Webb Firm, it did not alter or change his employment classification. Therefore, the date of the last action which formed a part of the breach occurred on January 1, 2006. Gluck, 960 F.2d at 1178. The court turns to the date of Williams' actual knowledge of the breach.

    2.   Williams' Actual Knowledge of the Breach

        a.   Whether Williams Knew About the Events that Allegedly Constituted a Breach of the Webb Firm's Fiduciary Duty

A plaintiff has actual knowledge of a breach of a fiduciary duty or a violation of ERISA when he or she has actual knowledge of all material facts necessary to understand that some claim exists. Montrose, 243 F.3d at 787. "This does not mean that the three-year limitations period cannot begin to run until the plaintiff meets with a lawyer or otherwise develops a comprehensive understanding of her rights under ERISA." Bamgbose v. Delta-T Group, Inc., 638 F.Supp.2d 432, 439-40 (E.D. Pa. 2009) (citing Gluck, 960 F.2d at 1177). It does mean, however, that constructive knowledge is not sufficient, Montrose, 243 F.3d at 787, and mere knowledge of the transaction constituting the alleged violation is not sufficient. Gluck, 960 F.2d at 1178.

In International Union of Electronic Workers v. Murata Erie North America, Inc., 980 F.2d 889, 900 (3d Cir. 1992), the court of appeals found that the defendant failed to make the showing of actual knowledge. Id. at 901. The court stated:

> Murata concedes that the notice it provided to the plaintiffs in
> October 1985 did not discuss the content of the amendment.
> Rather, the notice simply stated, in general terms, that the Plans
> had been amended. Whereas the plaintiffs in Gluck were informed
> of the content of the amendment but may not have known its full

> legal import, there is no showing here that the plaintiffs even knew
> that the Plan documents had been amended... .

Id. at 901.  The court stated that participants in the plans could not have had actual knowledge of

the defendant's breach of fiduciary duty because the letters to the participants did not

acknowledge that there was a controversy over the reversion of excess funds, which was the crux

of the claim at issue in the proceedings. Murata, 980 F.2d at 900-01 (3d Cir. 1992) (finding that

plaintiffs did not have actual knowledge of their injury because the adopted amendment

"disguised the potential for breach of a fiduciary duty" and literature "distributed to employees

announcing the amendment was misleading").  Plaintiffs must be fully apprised of the material

facts to understand the breach of the fiduciary duty. See In re Unisys Corp. Retiree Medical

Benefits Erisa Litigation, No. 03-3924, 2007 WL 2071876, at *5-6 (E.D. Pa. July 16, 2007)

(finding choices concerning a retiree's medical benefits "buried" in thirty-nine page booklet that

was only handed out after retirement or available upon request in the human resources office

required " 'research and scrutiny' that is inconsistent with § 413's actual knowledge standard")

(internal citation omitted); Olsen v. Hegarty, 180 F.Supp.2d 552, 566 (D. N.J. 2001) (finding that

a review of the asset make-up of an employee benefit plan may have suggested fiduciary

misconduct, but that the plaintiff lacked access to the raw data which would have disclosed the

investment scheme).

In the instant action, Williams knew about the material elements of the Webb

Firm's alleged breach of fiduciary duty, at the latest, in May 2007.  Williams contends that he

acquired actual knowledge of Webb's breach when he filed for unemployment benefits on

November 15, 2009, or in May 2010, when he received retroactive unemployment benefits

payments from the PDLI. (ECF No. 41 at 9.)  The PDLI determination would have confirmed

Williams' belief that he was harmed by the Webb Firm; however, like the plaintiffs in Ziegler

Williams had actual knowledge of his injury before he filed with the PDLI. Ziegler, 916 F.2d at 552.

By January 1, 2006, Williams was aware that he would no longer receive benefits from the Webb Firm. On November 30, 2005, the Webb Firm issued Williams an offer letter for the Second ICA that provided: "You [] indicated that you understood you would lose all current and future benefits of [the Webb Firm] and you indicated you would make other healthcare arrangements." (ECF No. 55-1 at 10-11.) Although the facts presented to the court do not include a signed contract between the parties, Williams has not disputed that he worked under the terms of the ICAs or that he received the Second ICA offer letter. He was fully aware that his choice to work under the Second ICA precluded his receipt of employment benefits from the Webb Firm. Ziegler, 916 F.2d at 552.[1]

More to this point, in May 2007, Williams approached Orkin to discuss a change in his relationship with Webb. (ECF No. 58 ¶ 41.) Williams stated in his affidavit that he "approached [Orkin] to discuss the possibility of becoming an associate attorney of the [Webb Firm] again because of the fact that Plaintiff's wife would begin working part-time and may not be eligible for medical insurance." (ECF No. 51-2 ¶ 7.) It is clear, as indicated by Williams, that in May 2007, he was aware that he was not receiving benefits from the Webb Firm. Repetitive

_____

[1] The parties did not argue whether the receipt of each payment under the ICA triggered a new period of limitations. Meagher, 856 F.2d at 1422-23. If this were the case, the three-year period was clearly triggered by each such payment and would have made all claims prior to November 8, 2007, which is three years from the date he filed his complaint on November 8, 2012, barred by the three-year period. The court in Meager noted; "[w]e have held that the 'statute of limitations is triggered by [a claimant's] knowledge of the transaction that constituted the alleged violation, not by [his] knowledge of the law.' " Id. at 1423 (quoting Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985). The transactions here were not the payments under the ICAs but the ICAs under which he was misclassified, and he knew about the harmful consequences of that misclassification by May 2007, at the latest.

Williams was also in a unique position to understand the tasks required of an associate attorney of the Webb Firm. Williams worked as an associate attorney for the Webb Firm from July 1, 2001, until his resignation, effective December 31, 2005. (ECF No. 55-1 at 10-11.); (ECF No. 58 ¶¶ 1, 3, 27, 28). By May 2007, Williams had worked under the Second and Third ICAs for a year and a half. Williams stated that he understood the tasks he performed under the ICAs were similar to, or the same as, the tasks he performed as an associate attorney. (ECF No. 51-2 ¶¶ 14-19.) As indicated by Williams, his unique position allowed him to understand that he was performing the same tasks under the ICAs for the Webb Firm that he performed as an associate attorney without receiving employment benefits.

There is no dispute that in May 2007, Williams knew that he was not receiving benefits from the Webb Firm and that he was performing similar, or the same, occupational tasks as he previously performed as an employee of the Webb Firm. The facts on record indicate that Williams' understanding of his employment situation in May 2007 was the same as that on November 15, 2009, when he filed for unemployment benefits. The evidence shows that Williams knew about the harm from the misclassification. Based on these facts, Williams knew about the material elements of the Webb Firm's alleged breach of fiduciary duty, at the latest, in May 2007 more than three years prior to the date he filed his complaint in this action.

b. Whether Williams Knew the Webb Firm's Actions Constituted a Breach of a Fiduciary Duty or a Violation of ERISA

The Court of Appeals for the Third Circuit requires defendants to show that plaintiffs knew the events that occurred supported a claim for a breach of fiduciary duty or violation of ERISA. Cetel, 460 F.3d at 511 (citing Montrose, 243 F.3d at 787 (internal citations omitted)). To show knowledge of a breach of fiduciary duty or violation of ERISA under 29 U.S.C. § 1113 requires that the Webb Firm adduce facts to show that Williams understood he

suffered harm or knew the harmful consequences of his decision. See Gluck, 960 F.2d at 1177

(actual knowledge could come from "opinions of experts, knowledge of a transaction's harmful

consequences, or even actual harm").

In Kurz v. Philadelphia Elec. Co., 96 F.3d 1544 (3d Cir. 1996), the Court of

Appeals for the Third Circuit decided the statute of limitations barred the employees' claims that

the defendant breached its fiduciary duty by altering their employee pension plans.  In Kurz, the

employer had made efforts to amend its pension plan in order to provide more lucrative benefits

to its employees.  The employer announced the favorable change on July 2, 1987, and

implemented the amendment on August 1, 1987. Id. at 1547.  The plaintiffs in the case were

employees who had inquired about their benefits after May 28, 1987, but retired before the July

2, 1987 announcement.  The court of appeals reasoned that employees had "actual knowledge"

of the breach of fiduciary duty claim the day the employer announced the pension increase

because on that date all the material elements of a breach of fiduciary duty were "patently

obvious." Id. at 1551.  The court found that on the day of the announcement, those who had

inquired about their benefits and had retired prior to the amendment knew that: (1) benefits had

been increased; (2) they were not eligible for the new benefits package; and (3) their employer

had failed to inform them about the change, even though they had asked. Id.   The employees had

"actual knowledge" of the event (the modification of benefits) and the consequences that ensued.

Id.

Looking at the totality of this situation, the Webb Firm affirmatively showed that

Williams knew the Webb Firm's actions constituted a breach of a fiduciary duty, at the latest, in

May 2007. See Connell v. Trustees of the Pension Fund of the Ironworkers Dist. Council of

Northern New Jersey, 118 F.3d 154, at 160 (3d Cir. 1997) ("[p]ut simply [] the actual knowledge

requirement is necessarily intertwined with the cause of action or the theory of the breach")

(citing Martin v. Consultants & Administrators, Inc., 966 F.2d 1078 (7th Cir.1992) (courts must

take into account "the complexity of the underlying factual transaction, the complexity of the

legal claim and the egregiousness of the alleged violation.")).

Williams argued that he did not have actual knowledge of the Webb Firm's

breach until he filed for unemployment benefits on November 15, 2009, or in May 2010, when

he received retroactive unemployment benefits payments from the PDLI. (ECF No. 41 at 9.)  The

determinations by the PDLI and IRS are not controlling with respect to Williams' knowledge

that the Webb Firm's actions constituted a breach of a fiduciary duty.  What matters is whether

Williams had actual knowledge of all material facts necessary to appreciate that a claim against

the Webb Firm existed in May 2007. Iola, 700 F.3d at 99-100.  The limitations period in an

ERISA action or violation begins to run on the date that the person bringing suit learns of the

breach or violation, regardless of whether any plan fiduciary or service provider knew about the

violation.

By May 2007, at the latest, Williams was aware of the harm caused by the Webb

Firm's breach.  As discussed above, the breaching conduct is the misclassification of the plaintiff

as an independent contractor, which occurred when plaintiff agreed to work under the Second

ICA. (ECF No. 55-1 at 10-11.)  Williams' unique position as a former employee of the Webb

Firm allowed him to understand that his tasks under the ICAs did not change from his former

associate attorney position. (ECF No. 51-2 ¶¶ 14-19.)  Beginning in January 2006, Williams

knew he was not receiving benefits from the Webb Firm. Gluck, 960 F.2d at 1177; (citing

Meagher, 856 F.2d at 1422–23).  Unlike many of the decisions in which the Third Circuit Court

of Appeals has found the plaintiffs lacked an understanding that they possessed an ERISA claim,

Williams knew of his harm, i.e. that he was performing the same tasks under the ICAs for the Webb Firm that he performed as an associate attorney without receiving employment benefits, by May 2007 at the latest. See Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir. 2002) (holding Roush could not have known that he and the participants had an ERISA cause of action because he had not yet been harmed, did not have knowledge that he would be harmed, and was told by the defendant that it would cure the violations and deficiencies); Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 787 (3d Cir. 2001) (though the hospital was sent a letter suggesting an ERISA claim existed, the letter was sent by opposing counsel and "[p]arties are not required to believe every claim hurled by their adversaries" and the letter did not suggest that the plaintiffs had a claim against the defendants). The totality of Williams' situation demonstrates that he was aware of all the necessary material facts to determine that the Webb Firm had misclassified him under the ICAs and that his classification was suspect. Cetel, 460 F.3d at 511.

In May 2007, Williams evidenced his understanding of his harm, or his understanding of the transactions harmful consequences, when he approached Orkin to discuss a change in his relationship with the Webb Firm. (ECF No. 58 ¶ 41.) As stated above, Williams' affidavit states he approached Orkin to discuss "the possibility of becoming an associate attorney of the [Webb Firm] again because of the fact that Plaintiff's wife would begin working part-time and may not be eligible for medical insurance." (ECF No. 51-2 Ex. D ¶ 7.) Williams' statement is evidence that he understood, at a minimum, the harmful consequences of working under an ICA. Ziegler, 916 F.2d at 552; see Connell v. Trustees of the Pension Fund of the Ironworkers Dist. Council of Northern New Jersey, 118 F.3d 154, 158 (3d Cir. 1997) ("Indeed, both Connell and Nelson felt sufficiently aggrieved by the Fund's actions to question their union

representatives. Thus by 1981 or 1982, Connell and Nelson had 'actual knowledge of all of the [material] elements of the violation,' ") (internal citations omitted). Although Williams may not have had a perfect understanding of his injury until the PDLI and IRS determinations, that "does not mean that [he] lacked actual knowledge of the alleged breach until then." Ziegler, 916 F.2d at 552; see Akrom v. Polley, No. 06-705, 2006 WL 3254532, at *6 (W.D. Pa. Oct. 6, 2006) (finding the plaintiff's claim barred by the statute of limitations because she had actual knowledge that her former husband forged her signature and received and excluded her from a lump sum payment). Williams knew the harmful consequences of working under the ICAs when he approached Orkin to discuss receiving medical benefits compensation from the Webb Firm in May 2007.

Without the need to perform additional research, Williams knew he was not receiving benefits from the Webb Firm and that he was harmed. After May 16, 2007, there were no additional material facts left for him to discover. Connell, 118 F.3d at 158. The fact that by May 2007, Williams knew all the material elements of the Webb Firm's breach of its fiduciary duty is "patently obvious." Kurz, 96 F.3d at 1551. Without affirmatively showing a genuine dispute about material facts, this court concludes that, at the latest, in May 2007, Williams was in possession of the material facts necessary to understand the events that allegedly constitute the Webb Firm's breach of its fiduciary duty. Cetel, 460 F.3d at 512; Gluck, 960 F.2d at 1177. Because Williams did not file the complaint in this case until November 8, 2012, his claims are barred by the applicable three-year statute if limitations. Under those considerations the Webb Firm's motion for summary judgment must be granted.

B. <u>Williams' Motion for Summary Judgment</u>

For the reasons set forth above, Williams' claim is time barred and his motion for summary judgment must be denied as moot.

## V. <u>CONCLUSION</u>

For the forgoing reasons, the Webb Firm's motion for summary judgment must be GRANTED.  Plaintiff's motion for summary judgment will be denied as moot.

Dated:  July 31, 2014                                          <u>/s/ JOY FLOWERS CONTI</u>
                                                                       Joy Flowers Conti
                                                                       Chief United States District Judge